SCOTT A. EDELMAN, SBN 116927
Email:  SEdelman@gibsondunn.com
JAY P. SRINIVASAN, SBN 181471
Email:  JSrinivasan@gibsondunn.com
MINAE YU, SBN 268814
Email:  MYu@gibsondunn.com
Gibson, Dunn & Crutcher LLP
2029 Century Park East, Suite 4000
Los Angeles, California 90067
Telephone:  (310) 552-8500
Facsimile:   (310) 552-7041

*Attorneys for Defendant*
*Metro-Goldwyn-Mayer Studios Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JOAN J. BUCK,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>METRO-GOLDWYN-MAYER STUDIOS INC., and DOES 1-100,<br><br>　　　　Defendants. | CASE NO. 2:14-cv-3637<br><br>**DEFENDANT METRO-GOLDWYN-MAYER STUDIOS INC.'S NOTICE OF REMOVAL OF CLASS ACTION**<br><br>Los Angeles Superior Court Case No. BC540146<br><br>[Declarations of Minae Yu and Edward J. Slizewski filed concurrently herewith] |

Gibson, Dunn &
Crutcher LLP

DEFENDANT'S NOTICE OF REMOVAL OF CLASS ACTION

# TABLE OF CONTENTS

Page

I. BACKGROUND AND SUMMARY OF THE COMPLAINT ........................... 1

II. NO ADMISSION ............................................................................................. 3

III. THIS COURT HAS JURISDICTION UNDER CAFA ...................................... 3

   A. Plaintiff Asserts This Action on Behalf of More Than 100 Putative Class Members ............................................................... 4

   B. Plaintiff and MGM Are Citizens of Different States ................................. 4

   C. The Amount in Controversy Exceeds Five Million Dollars ...................... 6

IV. REMOVAL IS TIMELY .................................................................................. 9

V. THIS COURT IS THE PROPER VENUE ........................................................ 10

VI. MGM HAS COMPLIED WITH PROCEDURAL REQUIREMENTS FOR REMOVAL ............................................................................................. 11

VII. CONCLUSION ............................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

### Cases

*Coleman v. Estes Express Lines, Inc.*,
  730 F. Supp. 2d 1141 (C.D. Cal. 2010) ............................................................. 7, 8

*Guglielmino v. McKee Foods Corp.*,
  506 F.3d 696 (9th Cir. 2007) .............................................................................. 7, 8

*Harris v. Bankers Life and Casualty Co.*,
  425 F.3d 689 (9th Cir. 2005) ................................................................................. 11

*Korn v. Polo Ralph Lauren Corp.*,
  536 F. Supp. 2d 1199 (E.D. Cal. 2008) .................................................................. 7

*Kuxhausen v. BMW Fin. Servs. NA LLC*,
  707 F.3d 1136 (9th Cir. 2013) ..................................................................... 4, 5, 6, 11

*Lew v. Moss*,
  797 F.2d 747 (9th Cir. 1986) .................................................................................... 5

*Rodriguez v. At&T Mobility Servs. LLC*,
  728 F.3d 975 (9th Cir. 2013) .................................................................................... 7

*Roth v. CHA Hollywood Med. Ctr., L.P.*,
  720 F.3d 1121 (9th Cir. 2013) ........................................................................... 11, 12

*Serrano v. 180 Connect, Inc.*,
  478 F.3d 1018 (9th Cir. 2007) ................................................................................... 6

*Sweet v. UPS, Inc.*,
  2009 U.S. Dist. LEXIS 54909 (C.D. Cal. June 15, 2009) ..................................... 12

*Tompkins v. Basic Research LLC*,
  2008 U.S. Dist. LEXIS 81411 (E.D. Cal. Apr. 22, 2008) ........................................ 5

*Visendi v. Bank of Am., N.A.*,
  733 F.3d 863 (9th Cir. 2013) ..................................................................................... 6

*Yeroushalmi v. Blockbuster Inc.*,
  2005 U.S. Dist. LEXIS 39331 (C.D. Cal. July 11, 2005) ........................................ 8

### Statutes

28 U.S.C. § 1332(c)(1) ..................................................................................................... 6

28 U.S.C. § 1332(d) .............................................................................................. 1, 4, 10

28 U.S.C. § 1332(d)(1)(B) ........................................................................................ 4, 10

28 U.S.C. § 1332(d)(2) ............................................................................................. 6, 10
28 U.S.C. § 1332(d)(2)(A) ............................................................................................ 10
28 U.S.C. § 1332(d)(4) ................................................................................................... 6
28 U.S.C. § 1332(d)(5)(B) ............................................................................................ 10
28 U.S.C. § 1332(d)(6) ................................................................................................... 8
28 U.S.C. § 1441 ............................................................................................................. 1
28 U.S.C. § 1441(a) ...................................................................................................... 12
28 U.S.C. § 1446 ............................................................................................................. 1
28 U.S.C. § 1446(b)(1) ................................................................................................. 11
28 U.S.C. § 1453 ............................................................................................................. 1
28 U.S.C. § 84 .............................................................................................................. 12
Cal. Bus. & Prof. Code § 17200 .................................................................................... 2
Cal. Code Civ. Proc. § 382 ............................................................................................. 4

**Other Authorities**

S. Rep. No. 109-14 .......................................................................................................... 4

**TO THE CLERK OF THE ABOVE-ENTITLED COURT AND ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, Defendant Metro-Goldwyn-Mayer Studios Inc. ("MGM" or "Defendant") hereby removes the above-captioned action from the Superior Court of the State of California for the County of Los Angeles to the United States District Court for the Central District of California, Western Division.  As set forth below, this Court has original jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA") because (1) Plaintiff Joan J. Buck ("Buck" or "Plaintiff") purports to assert this action on behalf of more than one hundred putative class members; (2) Plaintiff and MGM are citizens of different states; and (3) the aggregate amount in controversy exceeds five million dollars.  *See* 28 U.S.C. § 1332(d).  Removal is thus proper under 28 U.S.C. §§ 1441, 1446, and 1453.

## I.   BACKGROUND AND SUMMARY OF THE COMPLAINT

1. On or around March 21, 2014, Plaintiff commenced this action (the "Action") by filing a putative class action complaint captioned *Buck v. Metro-Goldwyn-Mayer Studios Inc.*, Case No. BC540146 (the "Complaint" or "Compl."), in the Superior Court of the State of California for the County of Los Angeles.  *See* Declaration of Minae Yu in Support of Defendant's Notice of Removal ("Yu Decl."), Ex. A.

2. In her Complaint, Plaintiff alleges that MGM is contractually required to pay a portion of the revenue it receives from the exploitation of motion pictures distributed via the so-called "home video market" to persons and/or entities described as "profit participants."  Compl. ¶ 1.  Plaintiff further alleges that MGM has not included all of the revenue MGM receives from the exploitation of motion pictures in the home video market in determining the amount of contingent compensation that profit participants are entitled to receive.  *Id.*  Plaintiff asserts the following causes of action:

  (1) Breach of Contract;

  (2) Breach of Implied Covenant of Good Faith and Fair Dealing;

  (3) Money Had and Received;

  (4) Declaratory Relief;

  (5) Open Book Account;

  (6) Violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; and

  (7) Conversion.

Compl. ¶¶ 41-82.

  3. Plaintiff purports to assert these claims pursuant to California Code of Civil Procedure § 382 on her own behalf and on behalf of a putative nationwide class, which Plaintiff defines as:

> All persons and entities, their agents, successors in interest, assigns, heirs, executors, trustees, and administrators who are or were parties to agreements containing the "100% Gross Receipts Provision"[1] or its equivalent, where MGM included less than 100% of the income derived from VHS, DVD, laser disc, Video-On-Demand, digital download, streaming, and all other non-theatrical methods of distribution when MGM accounted and/or reported to such persons and entities with respect to contingent compensation.

Compl. ¶ 29. Plaintiff alleges that there are "hundreds" of members in the putative class. *Id.* ¶ 33.

  4. Plaintiff seeks monetary damages, injunctive, and/or declaratory relief on behalf of herself and other putative class members. Compl. ¶ 3. Among other things, Plaintiff requests an injunction requiring MGM to include 100% of the income derived

---

[1] Plaintiff defines "100 % Gross Receipts Provision" as a contractual provision that defines Gross Receipts as "all moneys derived by [MGM] and its subsidiaries from the lease, license, rental, dealing in, and distribution of the rights in the Picture in all gauges and in all versions ... The term 'gross receipts' shall include the aggregate of the following, to wit: The 'domestic theatrical gross receipts,' the 'foreign theatrical gross receipts' and the 'incidental gross receipts.'" Compl. ¶ 17.

1  from distribution of motion pictures through the "home video" format—which Plaintiff
2  defines in her allegations to include VHS, DVD, laser disc, Video-On-Demand, digital
3  download, streaming, and all other methods of distribution of motion pictures that are
4  categorized by MGM as "home video"—in computing contingent compensation for
5  putative class members, damages in an amount to be proven at trial, punitive damages,
6  and attorneys' fees.  Compl. at p. 16.  Plaintiff does not plead a specific amount in
7  controversy.

8       5.    On March 27, 2014, Plaintiff served a copy of the Complaint on MGM.
9  On April 23, 2014, the parties stipulated to a fifteen day extension of time for MGM to
10 respond to the Complaint.  MGM has not yet responded to the Complaint in the state
11 action.

## II.  NO ADMISSION

13      6.    MGM denies any liability in this case, both as to Plaintiff's individual
14 claims and as to the putative class members' claims, and will present compelling
15 defenses to these claims.  Further, MGM believes that Plaintiff's proposed class
16 definition is improper and that class treatment is inappropriate in this case.  As such,
17 MGM will vigorously oppose certification of the putative class Plaintiff purports to
18 represent.  But for the sole and limited purpose of establishing the basis of this Court's
19 jurisdiction over this action, MGM assumes Plaintiff's allegations in the Complaint.  In
20 alleging the amount in controversy and other matters in this removal pleading, MGM
21 does not concede in any way that the allegations in the Complaint are accurate or that
22 Plaintiff or any other putative class member is entitled to any relief whatsoever.

## III.  THIS COURT HAS JURISDICTION UNDER CAFA

24      7.    CAFA vests federal district courts with original jurisdiction over "a class
25 action" that meets certain jurisdictional requirements.  CAFA defines the term "class
26 action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure
27 or similar State statute or rule of judicial procedure authorizing an action to be brought
28 by 1 or more representative persons as a class action."  28 U.S.C. § 1332(d)(1)(B).  As

a threshold matter, this action qualifies as a "class action" because Plaintiff brings this lawsuit pursuant to section 382 of the California Code of Civil Procedure, *see* Compl. ¶ 29, which permits a party to "sue or defend for the benefit of all." Cal. Code Civ. Proc. § 382.

8. Removal of a class action under CAFA is proper if: (1) there are at least 100 members in the putative class; (2) there is minimal diversity between the parties, such that at least one class member is a citizen of a state different from the state of any defendant; and (3) the aggregate amount in controversy exceeds five million dollars, exclusive of interests and costs. *See* 28 U.S.C. § 1332(d); *see also Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1140 (9th Cir. 2013). Congress intended federal courts to resolve any uncertainties about these jurisdictional requirements "in favor of exercising jurisdiction over the matter." S. Rep. No. 109-14 at 42. Because all three requirements are satisfied in this case, removal under CAFA is appropriate.

### A. Plaintiff Asserts This Action on Behalf of More Than 100 Putative Class Members

9. The requirement that the putative class consist of at least one hundred members is met here because Plaintiff alleges that "there are hundreds of Class members." Compl. ¶ 33. Such allegation is sufficient to satisfy the class size requirement under CAFA since "'hundreds,' by definition, means at least 200." *Kuxhausen*, 707 F.3d 1136, 1140; *see also Tompkins v. Basic Research LLC*, 2008 U.S. Dist. LEXIS 81411, *8 (E.D. Cal. Apr. 22, 2008) (concluding that satisfaction of class size requirement under CAFA was facially apparent from plaintiff's complaint because allegations of "a class of 'thousands of persons'" implies "a logical minimum of 2,000 class members").

### B. Plaintiff and MGM Are Citizens of Different States

10. Plaintiff is a citizen of the state of New York. For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *Lew v. Moss*, 797 F.2d 747, 749-750 (9th Cir. 1986). "[T]he determination of an individual's domicile

involves a number of factors (no single factor controlling), including: current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes." *Id*. MGM's investigation has revealed objective facts that establish Plaintiff is domiciled in New York: Plaintiff is a resident of New York. Compl. ¶ 8. She is a Chief Executive Officer of a company that has its principal place of business in New York and has been a contributing editor for various magazines based in New York. Yu Decl. ¶ 9, Ex. F. Plaintiff owns property located in New York and is registered to vote in New York. *Id.* at ¶ 10, Exs. G, H & I. Accordingly, Plaintiff is a citizen of New York and cannot be deemed to be a citizen of California.

11. MGM is a corporation formed under the laws of the State of Delaware with its principal place of business located in Beverly Hills, California. Compl. ¶ 9. MGM is therefore a citizen of Delaware and California—not New York. 28 U.S.C. § 1332(c)(1) (providing that for purposes of section 1332, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business").

12. Because the named Plaintiff's citizenship is different from that of MGM, CAFA's minimal diversity requirement is satisfied. 28 U.S.C. § 1332(d)(2); *see also Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007) (explaining that "under CAFA, complete diversity is not required; 'minimal diversity' suffices").

13. For purposes of removal, this Court need not consider the applicability of the so-called "local controversy" or "home-state controversy" exceptions to CAFA, as the Ninth Circuit has held that these exceptions are not jurisdictional. *Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 869 (9th Cir. 2013) ("The 'local controversy' exception is not jurisdictional."); *Serrano*, 478 F.3d at 1023 (holding that "the provisions set forth

in §§ 1332(d)(3) and (4) are not part of the prima facie case for establishing minimal diversity jurisdictional under CAFA"); *see also Kuxhausen*, 707 F.3d at 1139 n.1 (declining to consider the CAFA exceptions sua sponte). Moreover, the burden is not "on the removing party to show the ***inapplicability*** of the exceptions"; rather, "the party seeking remand must prove the ***applicability*** of such exception[s]." *Serrano*, 478 F.3d at 1021-22, 1024 (emphasis added).

14. Neither the "local controversy" nor the "home-state controversy" exceptions apply here. To prove that these exceptions to CAFA jurisdiction apply, Plaintiff bears the burden of showing that greater than two-thirds of the members of the proposed class are citizens of California. 28 U.S.C. § 1332(d)(4). Plaintiff cannot make this showing because MGM's investigation has determined that fewer than two-thirds of MGM's profit participants who meet Plaintiff's proposed class definition are citizens of California. Declaration of Edward J. Slizewski ("Slizewski Decl.") ¶ 3. Thus, this action cannot be remanded on the basis of the "local controversy" or the "home-state controversy" exceptions to CAFA jurisdiction.

**C.     The Amount in Controversy Exceeds Five Million Dollars**

15. Where, as here, the Complaint does not specify a particular amount in controversy, the Ninth Circuit applies "a preponderance of the evidence standard" to determine whether removal under CAFA is proper. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007); *accord Rodriguez v. At&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013). A defendant seeking to remove under CAFA need only "provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [the jurisdictional] amount'" of $5 million. *Guglielmino*, 506 F.3d at 699. "The burden is not daunting, and a removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages." *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010) (internal quotations omitted).

16. In assessing whether the amount in controversy has been satisfied, "a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008). In other words, "the Court looks to what the plaintiff has alleged, not what the defendants will owe." *Coleman*, 730 F. Supp. 2d at 1148. Here, Plaintiff alleges that she and the putative class members are entitled to common law and statutory damages, punitive damages, injunctive relief, accounting of monies due, restitutionary disgorgement, and attorneys' fees. Compl. ¶¶ 47, 53, 56, 66, 73, 81, and p. 16. The value of each of these remedies must be included in calculating the amount in controversy. *Guglielmino*, 506 F.3d at 698 (holding that any relief that would entail a payment by defendant—other than interests and costs—must be included within any amount-in-controversy calculation, including compensatory and statutory damages, exemplary and punitive damages, rescission and restitution, cost of injunction and attorneys' fees); *Yeroushalmi v. Blockbuster Inc.*, 2005 U.S. Dist. LEXIS 39331, at *19 (C.D. Cal. July 11, 2005) (holding that under CAFA, "it is proper to consider the cost of injunctive relief, potential punitive damages, and attorney's fees"). Additionally, for purposes of determining the amount in controversy, CAFA expressly permits aggregation of damages of individual class members. See 28 U.S.C. § 1332(d)(6).

17. Plaintiff does not allege any specific amount in controversy but her central theory is that "MGM only includes 20% of the revenue generated from Home Video distribution in the gross receipts for profit participants" and "wrongfully kept" outright "80% of the revenue generated from such distribution." Compl. ¶ 14; *see also id.*, ¶ 27 ("MGM has under credited and/or underpaid each and every Class member, while also deriving substantial financial benefits from its wrongful retention of up to 80% of the revenue from Home Video distribution."). As such, Plaintiff alleges that her claim and each putative class member's claim could be as much as four times what MGM has already paid to them in contingent compensation distributions.

Furthermore, Plaintiff alleges that her claims and each putative class member's claims are not bound by the applicable statutes of limitations but instead extend back decades.

18. Although MGM denies all liability with respect to each of Plaintiff's causes of action, if Plaintiff's alleged theory of recovery (which MGM believes to be inappropriate and inaccurate) is applied to her claims for purposes of assessing the amount in controversy requirement necessary for removal only, Plaintiff individually seeks no less than $80,180.00 in compensatory damages. To wit, MGM has paid Plaintiff and her predecessors in interest approximately $20,045.00 as contingent compensation attributable to DVD and video cassette sales. Slizewski Decl., ¶ 4. Under Plaintiff's own theory of damages alleged in the Complaint, MGM should have paid as much as five times that amount ($100,225.00), amounting to an alleged shortfall of approximately $80,180.00.

19. Because Plaintiff alleges that her "claims are typical of the claims of other Class members" and that there are at least 200 members in the putative class, Compl. ¶¶ 33, 35, the Court must therefore presume for purposes of analyzing the amount in controversy requirement that the Complaint seeks as much as $16,036,000.00 in compensatory damages from MGM for just the DVD and video cassette portions of what Plaintiff alleges to be a larger basket of "home video" revenues.[2] In calculating the amount in controversy, the Court is permitted to assume that Plaintiff will recover the maximum amount alleged. *See Korn*, 536 F. Supp. 2d at 1205-1206 (rejecting plaintiff's argument that amount in controversy was not met because "plaintiffs could be awarded less than the maximum" and concluding that "courts may consider the maximum statutory penalty available in determining whether the jurisdictional amount in controversy requirement is met"). Furthermore, the

---

[2] These two revenue streams constitute only a portion of "Home Video" distribution as that term is defined in Plaintiff's Complaint. Compl. ¶ 2. Thus, Plaintiff's alleged compensatory damage claim necessarily is greater than the amount calculated above.

$16,036,000.00 figure understates the damages Plaintiff seeks because, in addition to seeking compensatory damages for other elements of "home video" revenues, Plaintiff also seeks punitive damages on behalf of all class members as well as attorneys' fees incurred by the *four* different law firms (and at least *twelve* different lawyers) representing Plaintiff.  Accordingly, the allegations in the Complaint place substantially more than five million dollars "in controversy" required for removal under CAFA.  (In estimating the amount in controversy for purposes of removal only, MGM does not suggest or concede that Plaintiff or the putative class members have been damaged at all.)

20. Based on the foregoing facts and allegations, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because:

(a) This is a civil action which is a class action within the meaning of Section 1332(d)(1)(B);

(b) The action involves a putative class of at least 100 persons as required by Section 1332(d)(5)(B);

(c) The amount in controversy exceeds $5 million, exclusive of interest and costs as required by Section 1332(d)(2); and

(d) A member of the class is a citizen of a state different from any defendant as required by Section 1332(d)(2)(A).

Accordingly, this action is removable under 28 U.S.C. §§ 1441, 1446 and 1453.

### IV.   REMOVAL IS TIMELY

21. The mechanics and requirements for removal are governed by 28 U.S.C. § 1446.  Section 1446(b) identifies two thirty-day periods for removing a case. *Kuxhausen*, 707 F.3d at 1139.  The first thirty-day removal period is triggered if the case stated by the initial pleading is removable on its face. *Id.*; 28 U.S.C. § 1446(b)(1).  The second thirty-day removal period is triggered if the initial pleading does not indicate that the case is removable, and the defendant receives a copy of an amended pleading, motion, order or other paper from which removability may first be

ascertained. *Kuxhausen*, 707 F.3d at 1139; 28 U.S.C. § 1446(b)(1). Where "neither of the two thirty-day periods under § 1446(b)(1) and (b)(3) has been triggered," "[a] CAFA case may be removed at **any time**." *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013) (emphasis added).

22. MGM's removal is timely because at no time in the state court action has Plaintiff served any paper that revealed grounds for CAFA jurisdiction on its face. Although Plaintiff served MGM with the Complaint on March 27, 2014, the Complaint was "at best 'indeterminate.'" *Roth*, 720 F.3d at 1125 (quoting *Harris v. Bankers Life and Casualty Co.*, 425 F.3d 689, 693 (9th Cir. 2005)). "It did not reveal on its face that there was diversity of citizenship or that there was sufficient amount in controversy to support jurisdiction under CAFA."[3] *Id.*

23. Rather, through its own investigation conducted in the weeks immediately following service of the Complaint, MGM discovered the facts supporting CAFA jurisdiction as set forth in this Notice of Removal. Upon learning the relevant facts supporting removal, MGM promptly filed this Notice of Removal. MGM's removal is therefore timely. *See Roth*, 720 F.3d at 1126.

## V. THIS COURT IS THE PROPER VENUE

24. The U.S. District Court for Central District of California, Western Division is the federal judicial district in which the Los Angeles Superior Court sits. This action was originally filed in Los Angeles Superior Court, rendering venue in this

---

[3] Although the Complaint alleges Plaintiff's residency, it contains no allegations concerning her citizenship or domicile. *See* Compl. ¶ 8. Such a complaint is not clearly removable regardless of possible "clues" to the Plaintiff's citizenship. *Harris*, 425 F.3d at 696 (finding initial pleading not clearly removable on its face where only the parties' place of residence was alleged); *Sweet v. UPS, Inc.*, 2009 U.S. Dist. LEXIS 54909, 12-13 (C.D. Cal. June 15, 2009) (holding that Plaintiff's allegation regarding residency was not sufficient to trigger the thirty-day time period under § 1446(b)). Moreover, the Complaint fails to specify any amount in controversy.

federal judicial district and division proper for the purpose of removal.  28 U.S.C. § 84(c); *see also* 28 U.S.C. § 1441(a).

## VI. MGM HAS COMPLIED WITH PROCEDURAL REQUIREMENTS FOR REMOVAL

25. True and correct copies of the Summons and Complaint served on MGM are attached as Exhibits A and B to the Declaration of Minae Yu, filed concurrently herewith.  A true and correct copy of all remaining processes, pleadings and orders filed or received in the state court action are attached as Exhibit C through E to the Declaration of Minae Yu.  This constitutes the complete record of all records and proceedings in the state court and are appended hereto as required by 28 U.S.C. § 1446(a).

26. Upon filing this Notice of Removal, MGM will furnish written notice to Plaintiff's counsel, and will file and serve a copy of this Notice with the Clerk of the Los Angeles County Superior Court, pursuant to 28 U.S.C. § 1446(d).

## VII. CONCLUSION

27. MGM hereby respectfully removes this action from the Superior Court of the State of California for the County of Los Angeles to this Court.  Upon filing the Notice of Removal, MGM will furnish written notice to Plaintiff's counsel, and will file and serve a copy of this Notice with the Clerk of the Los Angeles Superior Court, as required by 28 U.S.C. § 1446(d).

Dated: May 12, 2014                           GIBSON, DUNN & CRUTCHER LLP

By:   /s/ Scott A. Edelman
         Scott A. Edelman

*Attorneys for Metro-Goldwyn-Mayer Studios Inc.*